**OVERNITE TRANSPORTATION COMPANY, Appellant,**

v.

**Michael A. GADDIS and Teddy B. Gordon, Appellees.**

**No. 89–CA–1149–MR.**

Court of Appeals of Kentucky.

March 23, 1990.

Discretionary Review Denied by Supreme Court Aug. 29, 1990.

Armer H. Mahan, Jr., Lynch, Cox, Gilman & Mahan, P.S.C., Louisville, Ky., for appellant.

Teddy B. Gordon, Louisville, Ky., for appellees.

Before GUDGEL, STUMBO and WEST, JJ.

STUMBO, Judge:

OVERNITE Transportation Company (hereinafter "Overnite") appeals from a judgment assessing damages and attorney's fees against it for allegedly wrongful discharge in violation of KRS 342.197. For the reasons set forth herein, we affirm.

Overnite raises three issues on appeal: 1) Whether the language "filing and pursuing a lawful [workers' compensation] claim" requires a formal claim for the employee to receive the protection of KRS 342.197; 2) Whether Overnite was entitled to a directed verdict, and; 3) Whether the jury instructions were proper.

In the case at bar, Michael Gaddis claimed to have been discharged due to his quest for benefits under the Workers' Compensation Act. He had not filed a formal claim but had given notice of his injury and received temporary disability benefits pursuant to KRS 342.040. Courts in other jurisdictions, however, have faced this precise issue with regard to their own retaliatory discharge provisions and have held that an employee could maintain an action for retaliatory discharge where the employer discharged the employee after the occurrence of a compensable injury but prior to the employee's institution of formal compensation proceedings. *See Wright v. Fiber Industries, Inc.*, 60 N.C.App. 486, 299 S.E.2d 284 (1983); *Texas Steel Company v. Douglas*, 533 S.W.2d 111 (Tex.Civ.App. 1976). *But see Bryant v. Dayton Casket Company*, 69 Ohio St.2d 367, 433 N.E.2d 142 (1982); *Genheimer v. Clark Grave Vault Company*, 70 Ohio App.2d 65, 434 N.E.2d 744 (1980).

█ If we accept Overnite's contention, no one could proceed under KRS 342.197 unless and until an employee filed a formal claim for compensation. We do not believe that the Kentucky legislature intended such a restrictive application of the statute. Rather, the legislature's purpose in enacting KRS 342.197 was to protect persons who are entitled to benefits under the workers' compensation laws and to prevent them from being discharged for taking steps to collect such benefits. A requirement that an actual filing of a claim is the only event which would trigger the statutory protection would frustrate the legislative intent evidenced in KRS 342.197. In the face of such a requirement, an employer could, upon receipt of any notice that an

employee intended to file for workers' compensation benefits, fire the claimant and avoid the consequences of KRS 342.197 entirely. Furthermore, such a requirement would result in a foot race, with the winner being determined by the event to first occur—either the firing of the employee or the filing of a claim with the Workers' Compensation Board.

■ The difficulty that we face in this case, however, arises from the arguably plain and unambiguous language of our statute. Although the legislative intent is the all-important or controlling factor in the interpretation of statutes, the statute is generally open to construction only where the language used requires interpretation or may be reasonably considered ambiguous. 73 Am.Jur.2d *Statutes* §§ 145 and 194 (1974). Arguably, KRS 342.197 is unambiguous in providing that a claim must have been literally filed and pursued in order for there to be liability on the part of an employer. The Ohio courts in *Bryant* and *Genheimer, supra,* relied on an accepted principle of statutory construction in supplying the common and generally accepted meaning to the wording of their retaliatory discharge statute in dismissing the claims of plaintiffs who filed their workers' compensation claims after they were fired. Texas courts, on the other hand, have construed a statute similar to the Ohio statute to reach the opposite result. *See Texas Steel Company, supra.*

However, the Texas statute at issue in *Texas Steel Company* and the Ohio statute at issue in *Bryant* and *Genheimer* both contain significantly broader provisions than our own Kentucky statute, The Texas statute (Art. 8307c, § 1, V.A.T.S.) provides in pertinent part as follows:

No person may discharge or in any other manner discriminate against any employee because the employee has in good faith *filed a claim, hired a lawyer to represent him in a claim, instituted, or caused to be instituted, in good faith, any proceeding* under the Texas Workmens' Compensation Act.... [Emphasis added.]

Similarly, the Ohio retaliatory discharge statute (R.C. 4123.90) provides that:

No employer shall discharge, demote, reassign, or take any punitive action against any employee because such employee *filed a claim or instituted, pursued or testified in any proceedings* under the workers' compensation act.... [Emphasis added.]

Given the language of these two statutes, it was not too far a leap for the court in *Texas Steel Company v. Douglas* to conclude that the plaintiff who had received compensation benefits prior to his discharge had "instituted or caused to be instituted proceedings" under the Texas Workmen's Compensation Act. It would have been just as easy for the Ohio court in *Genheimer v. Clark Grave Vault Company* to conclude that a similarly situated plaintiff had "pursued" proceedings under Ohio's workers' compensation act. It would take a slightly greater leap to conclude that Mr. Gaddis had actually *filed and pursued* a lawful claim for workers' compensation benefits as required under Kentucky's statute.

■ But the general rule requiring the construction of words in a statute in their ordinary sense is not an invariable one. Where application of the commonly accepted meaning of a word would operate to defeat the purpose of the statute and the intent of the legislature, a departure from the usual meaning of the words in a statute may be deemed proper. As we noted before, an overriding rule of statutory construction is that the manifest intent of the legislature will prevail over the literal import of the words. Although the language of a statute is to be construed literally where there is no reason why it should not be so interpreted, a departure from the ordinary or literal meaning of the words of the statute may be warranted where adherence to their literal meaning leads to an unreasonable or nonsensical result. The presumption is that the legislature will not intend an absurdity. *Valla v. Preston Street Road Water Dist. #1*, Ky., 395 S.W.2d 772 (1965); 73 Am.Jur.2d *Statutes* §§ 207 and 208 (1974); *See also 2A Sutherland Stat Const* § 46.07 (4th ed. 1984).

Courts, however, do have the power to change and will change the word "and" to the word "or" and vice versa, whenever such conversion is required to effectuate the obvious intention of the legislature. *Duncan v. Wiseman Baking Company,* Ky., 357 S.W.2d 694 (1961); *Boron Oil Company v. Cathedral Foundation, Inc.,* Ky., 434 S.W.2d 640 (1968); 73 Am.Jur.2d *Statutes* § 241, (1974); and 1A *Sutherland Stat Const* § 21.14 (4th ed. 1985).

A literal construction of KRS 342.197 would have required the granting of Overnite's motion to dismiss. However, we believe that a literal construction of the statute is not in conformity with the statute's purpose or the legislature's intent to protect employees from acts by their employers intended to prevent such employees from exercising their rights under the Workers' Compensation Act. The protection afforded by the statute should not be denied by a technical, narrow or strict interpretation of its provisions.

We are aware that it may be argued that KRS 342.197 is a codification of *Firestone Textile Co. v. Meadows,* 666 S.W.2d 730 (Ky.1983) and that the legislature thus intended to restrict its application to those cases where a claim has been filed. However, we believe the intent of the statute is clear and should not be so strictly interpreted.

As in Mr. Gaddis' case, it is possible in Kentucky for a worker to draw workers' compensation benefits without ever filing a claim for compensation. It is absurd to conclude that he was not "pursuing a lawful claim," even though he notified his employer of his injuries and received the benefits provided by law, simply because a formal claim. for compensation was never filed. Although the legislature used the connective word "and" in according protection for those persons "filing and pursuing a lawful claim," we think there is reasonable justification to regard "and" as "or" in KRS 342.197 in order to accomplish its purpose. This has the effect of placing employees who have filed *or* are pursuing a lawful claim for workers' compensation benefits within the protective ambit of the anti-retaliation provision. We hold that under the facts of this case, including the receipt of voluntary compensation payments, Mr. Gaddis was pursuing a lawful claim within the purview of KRS 342.197. To hold otherwise would allow employers to easily avoid the statute by firing the injured employee before he could file, a relatively easy circumvention of the statute which we do not believe the legislature intended.

Overnite next argues that there was insufficient evidence to create a jury issue and thus its motion for directed verdict should have been granted. We disagree. Without reciting all the evidence, it is clear from our review of the trial tapes that sufficient evidence was presented by Gaddis to create a jury issue.

■ Overnite's final argument is that the instructions were erroneous. The Trial Court gave the following instructions:

INSTRUCTION 1

In this case the Defendant, Overnite Transportation Co., had the right to discharge any employee, including the Plaintiff, Michael Gaddis, for any cause, or even no cause. An employee, including the Plaintiff, who is injured on the job, has a right to apply for and pursue Workers Compensation benefits. Thus an employer, including the Defendant, may not discharge an employee, including the Plaintiff, because the employee is pursuing a Workers Compensation claim.

INSTRUCTION 2

If you believe from the evidence that the Defendant discharged the Plaintiff because Plaintiff was pursuing a Workers Compensation claim, you will find for the Plaintiff; otherwise you will find for the Defendant.

In *Firestone Textile Co. Div.,* the Supreme Court addressed this issue: "Should courts judicially recognize a cause of action for wrongful discharge where an employee at-will has been discharged *solely* because he filed a workers' compensation claim? (emphasis ours)" 666 S.W.2d at 733. The only reference to jury instructions we have found in cases of this type is the separate concurrence of Justice Vance in *Firestone,*

wherein he states that the trial courts' instructions were erroneous for precisely the reasons set forth by Overnite.

In the instant case, Overnite presented a multitude of witnesses in support of its defense that Gaddis was discharged due to poor work performance and no other reason. Gaddis presented evidence that, other than a single incident not relied upon by Overnite for its discharge, he had never received any complaint about his work.

The issue presented to the jury was clearly expressed in the instructions: Was Gaddis fired because he sought workers' compensation benefits? As stated in Palmore "If liability is correctly predicated on what the plaintiff is required to prove, such a directive telling the jury what to do if it is not affirmatively convinced is sufficient to cover all defensive theories that are inconsistent with the predicated condition or proposition." 2 J. Palmore, *Kentucky Instructions to Juries*, p. 13 (4th ed. 1989).

Overnite did not contend that Gaddis' request for workers' compensation was but one factor in its decision to discharge, rather Overnite vigorously maintained that compensation played no role in the decision.

In finding for Gaddis, the jury rejected Overnite's defense. For the foregoing reasons, the judgment is affirmed.

All concur.